UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| JAMES M. ANTHONY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-561 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On September 21, 2011, plaintiff filed his application for benefits alleging a February 5, 2010 onset of disability.[1] (A.R. 160-61). Plaintiff's disability insured status expired on March 31, 2011. Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before March 31, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim was denied on initial review. On May 30, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 31-56). On June 6, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (A.R.

_____

[1]September 21, 2011 is a "protective filing date." It is the term for the first time an individual contacts the Social Security Administration about filing for benefits. See http://www.ssa.gov/glossary.htm (last visited Aug. 25, 2014). A protective filing date allows an individual to have an earlier application date than the date the signed application is actually filed. *Id.*

17-26).  On April 10, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits.  He asks the court to overturn the Commissioner's decision on the following grounds:

1. Did the ALJ "fail to properly evaluate treating opinion and treatment records?"

2. Did the ALJ commit reversible error when he failed to find that plaintiff had a severe knee impairment?

(Statement of Errors, Plf. Brief at 2, docket # 12).  I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on February 5, 2010, through March 31, 2011, but not thereafter. (A.R. 19). Plaintiff had not engaged in substantial gainful activity on or after February 5, 2010. (A.R. 19). Plaintiff had the following severe impairments: "right shoulder impairment, posttraumatic stress disorder, anxiety disorder and mood disorder." (A.R. 20). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is precluded from utilizing his dominant right upper extremity for overhead reaching. In addition, he is limited to performing simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple work related decisions, few, if any changes in the workplace, and no more than occasional and non-intensive interaction with the public, coworkers, and supervisors.

(A.R. 22). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:

The claimant's credibility is suspect in light of the discrepancies between his hearing testimony and the evidence of record. The claimant testified to a virtually nonexistent range of daily activities and social contacts , and indicated that those same limitations had existed since his alleged onset date. However, the claimant previously reported in documentary submissions that he does lawn mowing and snow removal, drives, shops, plays paint ball weekly with a friend, and goes to his children's sporting events. Exhibit 5E. The record also reveals that the claimant opened a paint ball shop after his alleged onset date, attended a men's retreat in May 2011, played softball, and was planning to go to a paint ball competition. Exhibits 4F and 16F. The undersigned finds that these previous reports regarding the claimant's functioning are inconsistent with the severe limitations alleged by the claimant in his hearing testimony. It is noted that, in his Function Report (Exhibit 5E), the claimant did not allege exertional limitations and indicated that he could walk ½ mile.

The claimant is less than fully credible regarding the severity of his anxiety and depression. The claimant started treatment at Ionia County Mental Health in May 2010, and almost immediately began to report improvement. Exhibit 3F. The claimant reported that he was feeling less anxious, concentrating better, and staying more focused on tasks. Exhibit 3F. The claimant also reported that he had been going out in public and attending his children's baseball games. Exhibit 3F. The claimant reported some increase in anxiety symptoms several months later, but his therapist indicated that his mood was euthemic (normal) and stable, and he had good memory, attention, and concentration. Exhibit 6F and Exhibit 12F. The claimant's therapist also assessed a GAF score indicative of no more than moderate impairment related limitations. Exhibit 12F. Furthermore, the claimant's activities after this exacerbation show improvement, as he reported that he would be bringing his children to games and watching them that spring. Exhibit 12F. See also the discussion above concerning the wide range of the claimant's activities.

The claimant is partially credible regarding his upper extremity impairment. The claimant had a partial articular surface tear of the infraspinatus portion of the conjoined tendon in his right shoulder. Exhibit 8F. The claimant participated in conservative treatment with no improvement, and eventually underwent right shoulder arthroscopic surgery in March 2010.

-4-

Exhibit 2A.  The claimant reported significant improvement after surgery, reporting that his activities of daily living were not affected by the impairment and he had returned to playing softball, tennis, and golf.  Exhibit 2A.  The claimant subsequently reported an increase in pain in the shoulder, but was found on examination to have a full range of motion and generally normal strength, with the exception of 4/5 strength in abduction and 4/5 strength in external rotation.  Exhibit 7F.  The record also reveals that the claimant eventually resumed playing softball, and reported that he is "doing great" with regards to the shoulder impairment. Exhibit 17F. Despite the inconsistencies between the claimant's testimony and his reports to treating providers, the undersigned has given him the benefit of a reasonable doubt and found him limited to performing light work with no use of his dominant right upper extremity for overhead reaching.

(A.R. 23).  The ALJ found that plaintiff was not able to perform any past relevant work.  (A.R. 25).

Plaintiff was 39-years-old as of his date last disability insured.  Thus, at all times relevant to his

claim for benefits he was classified as a younger individual.  (A.R. 25).  Plaintiff has at least a high

school education and is able to communicate in English.  (A.R. 25).  The ALJ found that the

transferability of job skills was not material to a disability determination.  (A.R. 25).  The ALJ then

turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding

a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that

there were approximately 42,000 jobs in Michigan that the hypothetical person would be capable

of performing.  (A.R. 50-52).  The ALJ found that this constituted a significant number of jobs.

Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff

was not disabled.  (A.R. 25-26).

**1.**

Plaintiff's arguments are based on evidence that he never presented to the ALJ.  (Plf. Brief at 7-8, 11).  This is patently improper.  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.   This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001);  *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").  The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Cline*, 96 F.3d at 148.

The relief that plaintiff requests is an order directing the Commissioner to award him benefits.  (Plf. Brief at 14).  He has not asked the court to remand this matter to the Commissioner for consideration of new evidence, nor attempted to shoulder his substantial statutory burden on such a request.  "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)."  *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006).  The

statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see DeLong v. Commissioner*, 748 F.3d 723, 725 n.3 (6th Cir. 2014); *Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014); *Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried, his burden. *See Ferguson*, 628 F.3d at 276.

On June 28, 2012, after the ALJ entered his decision and more than a year after plaintiff's disability insured status had expired, plaintiff underwent a consultative examination performed by Psychologist Douglas Bentley on a referral from plaintiff's attorney. Psychologist Bentley performed the examination and generated a report offering his opinion that plaintiff was disabled (A.R. 245-46, 758-71). The proffered evidence is new because it was generated after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

-7-

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed or carried his burden. The evidence that plaintiff filed in support of his unsuccessful application for discretionary review by the Appeals Council would not have persuaded the ALJ to reach a different conclusion on the question of whether plaintiff was disabled during the disability insured period at issue which ended on March 31, 2011. (A.R. 19).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ committed reversible error by failure to "properly evaluate treating opinion and treatment records." (Plf. Brief at 8). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See*

-8-

20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young*

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3).

*v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff's argument under the treating physician rule is more readily quoted than summarized and it is set forth verbatim below:

> The primary opinion ignored is relative to the claimants mental impairments. The claimant's treatment has been from a variety of sources. The most significant has been extensive contact with the psychiatrist/licenced therapist team at East side Therapy. Dr. Zhao, claimant's treating psychiatrist, specifically encouraged the claimant to seek cash assistance

for disability from the Department of Human Services in Michigan (CID 762).  Many visits with this team are documented in the record and identified in the Statement of Facts.

Claimant's treating therapist at Ionia Community Mental Health, a governmental agency, also opined as to Plaintiff's disability.  In addition to moderate limitations in a number of categories, the treater determined that the claimant suffered marked limitations in the ability to maintain attention; and ability to maintain a schedule and be punctual within expected tolerances.

(Plf. Brief at 10).

1.   Dr. Zhao

Plaintiff claims a February 5, 2010 onset of disability and his disability insured status expired on March 31, 2011.  He has no history of psychiatric hospitalization.  On May 3, 2010, plaintiff appeared at the Eastside Therapy and Counseling Center (Eastside).  (A.R. 470).  Rishi Mahabir, D.O., performed an intake assessment.  (A.R. 470-72).  Plaintiff related that he had no history of psychiatric treatment.  (A.R. 470).  On March 9, 2009, he had been the driver of a stationary school bus which was hit in the rear end by a small pickup.  He did not suffer any physical injury.  He did experience some anxiety and an increase in blood pressure.  (A.R. 458-59).  Plaintiff reported that he was on "temporary leave" and was anxious about returning to work as a bus driver.  He had received prescriptions for Prozac, Abilify, Klonopin and Xanax through his primary care provider.  (A.R. 468).  Psychiatrist Mahibir adjusted plaintiff's medications.  During subsequent examinations, plaintiff reported to Dr. Mahabir that his condition had improved.  (A.R. 466-69).  On September 20, 2010, treating psychiatrist Mahabir described plaintiff as pleasant and cooperative.  His mood was euthymic and stable.  He was alert, oriented, and his cognition was "good."  His sleep, appetite, weight, and energy level were "unimpaired."  Dr. Mahibir advised

-11-

plaintiff that he would need to find a new psychiatrist because he was leaving Eastside in late November 2010. (A.R. 465).

On December 28, 2010, plaintiff's new psychiatrist at Eastside, Shumin, Zhao, M.D., performed his initial psychiatric evaluation. (A.R. 601-03). He found that plaintiff was alert and oriented. His depression was "mild." His memory was normal. Plaintiff's speech was spontaneous, clear, and goal directed. His affect was in the normal range. Dr. Zhao offered a diagnosis of post traumatic stress disorder, major depressive disorder, and a generalized anxiety disorder. Dr. Zhao gave plaintiff a global assessment of functioning score of 55 to 65.[3] (A.R. 603). He noted plaintiff's complaints of financial difficulties. (A.R. 603). On February 8, 2011, Dr. Zhao noted that plaintiff was stable and without major depression. His anxiety was managed with medication. He suffered no side effects from his medications. (A.R. 600). Dr. Zhao never offered

---

[3]"GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009); see *Maloney v. Commissioner*, 480 F. App'x 804, 806 (6th Cir. 2012) (GAF scores "between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning[.]"); *Bartyzel v. Commissioner*, 74 F. App'x 515, 520 (6th Cir. 2003)(A GAF score of 65 "is indicative of only mild dysfunction.").

A GAF score is a subjective rather than an objective assessment. *White v. Commissioner*, 572 F.3d at 276. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky v. Commissioner*, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006). The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

an opinion that plaintiff was disabled or suffered significant work-related restrictions as a result of his mental impairments. (A.R. 598-603, 727-40). Plaintiff places great emphasis on the fact that on March 1, 2012, Dr. Zhao made a recommendation that plaintiff apply for cash assistance from DHS.[4] (A.R. 727). This was a response to plaintiff's ongoing complaints of financial difficulties,[5] not a medical opinion that plaintiff's mental impairments prevented him from working.

2.    Therapist Rapp

Plaintiff argues that the ALJ "failed to properly evaluate" the opinion of Kenneth Rapp, a therapist at Ionia County Mental Health (ICMH). (Plf. Brief at 10). On May 5, 2010, plaintiff appeared at ICMF on a self-referral (A.R. 352), and he had his initial therapy session with Mr. Rapp a week later. (A.R. 352, 363). Mr. Rapp's therapy notes document plaintiff's ongoing participation in activities such as paint ball, softball, attending his children's baseball games, yard work, deer hunting, going on fishing trips, riding his motorcycle, and driving long distances to the Petoskey area. (A.R. 366-84, 621-46, 695-725). On August 3, 2011, Mr. Rapp marked boxes on a "Mental Residual Functional Capacity Assessment" questionnaire reflecting his opinion that plaintiff was "markedly limited" in his ability to maintain concentration and attention for extended periods and in the ability to perform activities within a schedule, maintain regular attendance, and

---

[4]The page cited by plaintiff does not correspond to any opinion expressed by Dr. Zhao. It is a reference to a page of the material that plaintiff submitted in support of his unsuccessful application for review by the Appeals Council. It cannot be considered for the reasons stated in section 1, *supra*.

[5]Plaintiff testified that he settled his worker's compensation claim against his employer in February 2012. (A.R. 47).

be punctual within customary tolerances.  None of the answers was accompanied by supporting explanations or evidence.  (A.R. 617-18).

A therapist is not an "acceptable medical source."  *See* 20 C.F.R. §§ 404.1513(a), (d). There is no "treating therapist rule," and the opinion of a therapist is not entitled to any particular weight.  *See Engebrecht v. Commissioner*, No. 13-2418, __ F. App'x __, 2014 WL 3409520, at * 5 (6th Cir. July 14, 2014); *Matelske v. Commissioner*, No. 1:12-cv-93, 2013 WL 4520202, at * 13 (W.D. Mich. Aug. 26, 2013).  Only "acceptable medical sources" can:  (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)).  The opinions of a therapist fall within the category of information provided by "other sources."  *See* 20 C.F.R. § 404.1513(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at * 1, 4  (citing 20 C.F.R. §§ 404.1513, .1527); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *see also Hill v. Commissioner*, 560 F. App'x 547, 550 (6th Cir. 2014).  This is not a demanding standard.  It was easily met here.  The ALJ found that the extreme restrictions suggested by Mr. Rapp were bare conclusions and not well supported by the record:

> Kenneth Rapp, MA, LLP, the claimant's therapist, opined that the claimant's understanding and memory are moderately limited, as is his sustained concentration, persistence, and pace. Exhibit 15F. The undersigned has given this attorney-prepared form report little weight. As the courts have long recognized, form reports, in which the source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process. *See*, e.g., *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (terming form reports "weak

evidence at best"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); *O'Leary v. Schweiker*, 710 F.3d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole.

Of even greater significance, this particular form is fundamentally flawed to a degree that makes it virtually worthless in the evaluative process. The vocational expert noted that the definitions for both mild and moderate limitations are internally inconsistent, and that each of these definitions could encompass individuals having significantly differing functional limitations. According to the form, a "level 2" impairment -- one level beyond the "no limitation" category as set forth as "level 1"-- is defined as "not significantly limited and as imposing a 25% functional limitation in the various categories of work-related activities. This definition would thus encompass both a nonsevere impairment and one that would take the claimant "off task" in excess of 20% of the workday that was viewed by Mr. Brown, the testifying vocational expert, as being incompatible with full time competitive employment. Further, although a "level 3" impairment is characterized as "moderate" and would seem to be an appropriate choice if the "not significantly limited" level 2 criteria are not met, it is defined in a manner clearly designed to support a finding of disability, i.e., as being reflective of an individual who has a 50% limitation in his ability to perform the specified work-related activities. The form thus reflects an apparent sleight-of-hand attempt to establish disability that does not serve the claimant well.

(A.R. 24-25). I find no error.

## 3.

Plaintiff argues that the ALJ committed reversible error when he failed to find that his knee impairment was a severe impairment. (Plf. Brief at 11-13). The finding of a severe impairment at step 2 is a threshold determination. The finding of a single severe impairment is sufficient to require continuation of the sequential analysis.[6] *See Maziarz v. Secretary of Health &*

---

[6]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then

*Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  The ALJ found at step 2 of the sequential analysis that plaintiff had four severe impairments.  (A.R. 20).  The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."  *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC.  (A.R. 19, 22).

---

demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

**Recommended Disposition**

For the reasons set forth herein,  I recommend that  the Commissioner's decision be affirmed.


Dated:   August 29, 2014          /s/  Phillip J. Green
                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).